No. A-CV-31-82

COURT OF APPEALS OF THE NAVAJO NATION

September 30, 1983

Lee F. JOHNSON, Appellant,

vs.

Adolph JUNE, JR., Appellee.

Appeal heard April 20, 1983 before Chief Justice Nelson J. McCabe and Associate Justices Tom Tso and Henry Whitehair. Opinion by the Honorable Tom Tso.

Lawrence A. Ruzow, Esquire, of Window Rock, Navajo Nation (Arizona) appeared for appellant Johnson; Roy Ward, Esquire, of Flagstaff, Arizona appeared for respondent June; and Donald Juneau, Esquire, Assistant Attorney General of Window Rock, Navajo Nation (Arizona) appeared for the respondent Navajo Election Commission.

This is an appeal from the actions of the Navajo Election Commission with respect to the Navajo general election of November 2, 1982. This court has jurisdiction over such an appeal by virture of the authority vested in it by the Navajo election statutes.

AN ELECTION IN DISPUTE

This dispute comes from the Kaibeto Chapter, where Lee F. Johnson was the council delegate to the Navajo Tribal Council. The initial results of the November 2nd election for council delegate appeared to show that Mr. Johnson had been defeated for re-election by a close vote of 309 to 300, and that Adolph June, Jr. had been elected in his place. Naturally Mr. Johnson challenged the election, given the initial vote spread, and a recount was conducted on November 9, 1982, giving 307 votes to June and 292 to Johnson.

Mr. Johnson began proceedings before the Navajo Election Commission to contest the election. His theories, in summary, were (1) that registered voters had been denied their right to vote; (2) ineligible persons were permitted to vote, and (3) some individuals were permitted to vote under the names of other registered voters. The grievance was filed with the election commission on November 9th, and it was dismissed by the Navajo Election Commission on December 20, 1982.

This appeal was filed on December 22, 1982.

Because of the fact that an election dispute has the potential of not only denying rights to political candidates but to their constituents, on January 6, 1983 Chief Justice Nelson J. McCabe granted this appeal and ordered an expedited hearing on appeal. Jurisdiction under Sec.

51.A(7)(e) of the Election Law of the Navajo Nation was noted, and the Chief Justice made orders to move the case along.

The counsel for the parties also recognized the importance of moving the case along and the necessity to discuss it, and on January 17, 1983 a stipulation was filed which provided for assess to the election poll book and a new hearing before the Navajo Election Commissions.

The file discloses later sharp disagreements over the meaning of the stipulation, but on March 10, 1983 a hearing was scheduled and held before the Navajo Election Commission, and it upheld the validity of the election.

In reviewing the conduct and findings of the Election Commission this court finds that it initially held a recount and found June to be the winner. The number of ballots was small enough that a recount which confirmed the eligibility of voters was a comparatively simple matter. While there may be a disagreement about the new hearing on March 10th, the court finds that a hearing date was set for March 10th and that there was an agreement about that date. The board set the hearing and the appellant and his counsel simply failed to show for it because they disagreed as to some matters. There was an opportunity to fully air Johnson's grievances, and that opportunity was passed up.

In any event, this court finds that the Election Commission carefully carried out its duties to review the validity of the election. Speculation on the conduct of an election is not enough to overturn it and this court will not disturb the finding of the commission that Johnson's grievance was speculation. This is particularly true when there were poll watchers present to know what was going on. Kaibito is small enough that had there been any effort to turn away eligible voters, allow ineligible voters to cast ballots or permit one person to vote in the name of another, this would have been seen and reported.

## STANDARDS FOR REVIEW IN ELECTION CASES

The first principle we must outline is the fact that the Navajo Tribal Council has made the decision to set up the Navajo Election Commission as the body which determines the public policy of how elections are to be conducted. Noting that council decision, the question is whether the Election Commission carried out the responsibility given it. Where the court finds that the commission acted within the discretion given it, then its decision must be upheld. Once the court has found that the agency has been given discretion, the question is whether it acted within that discretion. See, Brodie and Linde, "State Court Review of Administrative Action: Prescribing the Scope of Review," 1977 Arizona St. L.J. 537 at 554 (1977).

The appellant raises the Indian Civil Rights Act in support of his claims, and our role must be generally the same in its standards as state standards, because

> "The standard for setting aside a tribal election must be at least as restrictive as that applied in non-Indian local election cases under the Constitution." Means v. Wilson, 522

What are some of those standards?

First of all, we agree with the proposition that there is a presumption that an election which has been held has been held regularly and validly. Gardner v. City of Reidsville, 153 S.E. 2d 139, 144 (N.C. 1967). Another canon in election cases is that:

> "Ordinarily...an election may be contested only for matters that would impeach the fairness of the result. Thus, mere irregularities or misconduct on the part of the election officers which do not tend to effect the result of the election are not ordinarily of themselves either a ground for contest, or proper matters of inquiry." 26 Am.Jur.2d, Elections Sec. 321

There was an excellent standard presented to this court by one of the parties, and we adopt it:

> "The true policy of the law is to sustain elections, and they will not be set aside on the ground of fraud unless the facts are such as to definitely show that there has been such fraud in the conduct of the election that neither candidate can be adjudges to have been fairly elected. To set aside an election is to deprive all the voters who voted at the election of their ballot, and it is to deprive the person who is successful at the election of the office which he won. The result, therefore, of the election should not be lightly set aside. Appellant does not show that fraud was practiced against him. He only shows that it might have been practiced. There is nothing in the record to connect appellee in any way with the fraud or alleged fraud." Motley v. Wilson, 82 SW 1023 (Ky. 1904).

The standards for overturning elections are strict, as they should be in the absence of a clear showing of unfairness.

> "All provisions of the election law are mandatory if enforcement is sought before election in a direct proceedings for that purpose; but, after election, all should be held directory only, in support of the results, unless of a character to effect an obstruction to the free and intelligent casting of the vote, or to the ascertainment of the result, or unless the provisions affect an essential element to the validity of an election, or that its omission shall render it void."
> Lorang v. High School District "C" of Cascade County, 247 P.2d 477, 479 (Mont. 1952).

Therefore, to sum up the principles which we have adopted, this court applies the following standards to election disputes:

1.  Election results are presumed to be regular and proper;
2.  Irregularities or misconduct in an election which does not tend to effect the result or impeach the fairness of the result will not be considered;
3.  Elections will not be set aside unless the facts definitely show such fraud and that there was *no fair election*.
4.  After an election, election provisions are to be seen as directions unless the violations obstructed a free and intelligent vote, affected an essential element of a valid election or an omission of a direction voids the election.

## THE ACTION OF THE ELECTION COMMISSION

This was a close vote, and a recount was held, There was a final hearing where there was an opportunity to show that there was some error which would change the outcome of the election. The presumption of regularity was not overcome; There was no showing of irregularities or misconduct to show a change of result or impeach the fairness of the election; There were no <u>facts</u> demonstrated to show fraud; And, there was nothing shown to show that a free intelligent vote was obstructed, an essential element of the election law was violated or that there was an omission which would void the election.

The court is reminded that the Navajo Tribal Council has given the Navajo Election Commission the discretion to decide election disputes. The functions of the court is to see whether the commission acted within that discretion, and we have received no evidence to show that it did not. Therefore it appears that the Election Commission carried out the mandate of the law, and this appeal is dismissed.

## THIS OPINION

This court issued its order disposing of the appeal on April 20, 1983 reserving this opportunity to render an opinion which would be of assistance in further election matters. Since the entry of the order, which is the final order of the court, the Honorable Henry Whitehair has ceased to be a judge. Therefore this opinion is issued upon the authority of the Chief Justice and the remaining associated justice as if the absent judge and dissented.